**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE, a minor, by his next friend and parent, | ) | |
| LANDIS SEGER; and LANDIS SEGER, on their | ) | |
| own behalf and on behalf of all others similarly | ) | |
| situated, | ) | Case No. 1:16-cv-04571 |
| | ) | |
| Plaintiffs, | ) | Judge Virginia Kendall |
| | ) | |
| v. | ) | |
| | ) | |
| HEALTH CARE SERVICE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**ATTORNEYS' FEES, EXPENSES, AND INCENTIVE AWARDS**

Martin S. Himeles, Jr. (*pro hac vice*)
Daniel P. Moylan (*pro hac vice*)
Adam Abelson (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD 21202-1031
(410) 332-0444

Caroline E. Reynolds (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
1800 M Street NW, Suite 1000
Washington, DC 20036
(202) 778-1800

Meiram Bendat (*pro hac vice*)
PSYCH-APPEAL, INC.
8560 W. Sunset Blvd., Ste. 500
West Hollywood, CA 90069
(310) 598-3690, ext. 101

D. Brian Hufford (*pro hac vice*)
Jason S. Cowart (*pro hac vice*)
ZUCKERMAN SPAEDER LLP
485 Madison Avenue, 10th Floor
New York, NY 10022
(212) 704-9600

George F. Galland, Jr.
David Baltmanis
MINER, BARNHILL & GALLAND, P.C.
325 N. LaSalle Street, Suite 350
Chicago, IL 60654
(312) 571-1170

*Counsel for Plaintiffs and the Putative Class*

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

BACKGROUND ......................................................................................................... 2

FEES AND EXPENSES REQUESTED ...................................................................... 4

ARGUMENT .............................................................................................................. 5

    I.    LEGAL STANDARDS .................................................................................. 5

    II.   A FEE AWARD EQUAL TO THIRTY PERCENT OF THE COMMON
         FUND IS FAIR AND REASONABLE IN THIS CASE. ............................... 10

        A.   The Requested Fees are Within the Market Range that Has Been Found
            Reasonable in Common Fund Cases in this Circuit. ................................. 10

        B.   Class Counsel Risked Nonpayment and Litigated the Case on Full
            Contingency. ............................................................................................ 13

        C.   Class Counsel Performed Substantial Work in Securing Significant
            Monetary Benefits for the Class. .............................................................. 11

        D.   Class Counsel Faced Significant Risks in Undertaking to Litigate this
            Complex, and Potentially Lengthy and Expensive, Case Through Class
            Certification and Trial ............................................................................... 15

        E.   A Lodestar Cross-Check, Although Disfavored by Courts in the Seventh
            Circuit, Nevertheless Confirms the Reasonableness of This Fee Award. .............. 17

    III.  THE COURT SHOULD GRANT FINAL APPROVAL OF THE INCENTIVE
         AWARD FOR THE NAMED PLAINTIFFS ............................................... 15

CONCLUSION ........................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Alyeska Pipeline Service Co. v. Wilderness Society*,
421 U.S. 240 (1975) ............................................................................................ 8

*Berger v. Xerox Corp. Ret. Income Guarantee Plan*, No. 00-584-DRH,
2004 WL 287902 (S.D. Ill. Jan. 22, 2004) ...................................................... 10

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .................................................................................. 5, 8, 16

*Cook v. Niedert*,
142 F.3d 1004 (7th Cir. 1998) ........................................................................ 18

*Elizabeth A. Craft, et al. v. Health Care Service Corporation*,
Case No. 1:14-cv-05853 (N.D. Ill. 2018) ..................................................... 3, 19

*Florin v. Nation's Bank of GA, NA*,
60 F.3d 1245 (7th Cir. 1995) (*Florin II*) ...................................................... 13

*Florin v. Nationsbank of Ga., N.A.*,
34 F.3d 560 (7th Cir. 1994) (*Florin I*) .................................................. 5, 8, 14

*Gaskill v. Gordon*,
160 F.3d 361 (7th Cir. 1998) ................................................................ 7, 10, 11

*Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374,
1995 WL 17009594 (N.D. Ill. Oct. 10, 1995) ................................................ 11

*Harman v. Lyphomed, Inc.*,
945 F.2d 969 (7th Cir. 1991) ........................................................................ 18

*In re Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ............................................................................ 6

*In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) ......................................................... passim

*In re Lawnmower Engine Horsepower Mtkg. & Sales Practices Litig.*,
733 F. Supp. 2d 997 (E.D. Wis. 2010) .............................................................. 9

*In re Synthroid Marketing Litig.*,
264 F.3d 712 (7th Cir. 2001) (*Synthroid I*) ........................................... 6, 7, 17

*In re Trans Union Corp. Privacy Litig.*,
629 F.3d 741 (7th Cir. 2011) ........................................................................ 14

*Kolinek v. Walgreen Co.*,
    311 F.R.D. 483 (N.D. Ill. 2015) ........................................................................ 11

*McKinnie v. JP Morgan Chase Bank, N.A.*,
    678 F. Supp. 2d 806 (E.D. Wis. 2009) ............................................................... 7

*Meyenburg v. Exxon Mobil Corp.*, 3:05-cv-15-DGW,
    2006 WL 2191422 (S.D. Ill. July 31, 2006) .................................................... 11

*Montgomery v. Aetna Plywood, Inc.*,
    231 F.3d 399 (7th Cir. 2000) .............................................................................. 6

*Silverman v. Motorola Solutions, Inc.*,
    739 F.3d 956 (7th Cir. 2013) ............................................................................ 13

*Spano v. Boeing Co.*, Case No. 06-CV-743-NJR-DGW,
    2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ............................................ *passim*

*Sutton v. Bernard*,
    504 F.3d 688 (7th Cir. 2007) ............................................................................ 13

*Travelers Property Cas. v. Good*,
    689 F.3d 714 (7th Cir. 2012) .............................................................................. 8

*Will v. Gen. Dynamics Corp.*, No. 06–698–GPM,
    2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ................................................... 10

## STATUTES

29 U.S.C. § 1132 ............................................................................................................ 3

29 U.S.C. § 1185a ................................................................................................... 2, 3

42 U.S.C. § 300gg-5 ..................................................................................................... 2

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 23 ........................................................................ 4, 5

## SECONDARY SOURCES

MCG Behavioral Health Care Guidelines ........................................................ *passim*

Plaintiffs Landis Seger and John Doe[1], on their own behalf and on behalf of the settlement class provisionally certified by the Court (the "Class"), respectfully submit this memorandum in support of their motion for attorneys' fees and expenses and for incentive awards.

Defendant Health Care Service Corporation ("HCSC") does not oppose Plaintiffs' request for an award of attorneys' fees and costs up to 30% of the Settlement Fund.[2]  HCSC also does not oppose Plaintiffs' request for an incentive award of up to $17,000 for the Settlement Class Representatives.

## **INTRODUCTION**

Zuckerman Spaeder LLP, Psych-Appeal, Inc., and Miner, Barnhill & Galland, P.C. (together, "Class Counsel") prosecuted this action to achieve a very favorable result for the Class.  Class Counsel secured significant monetary relief for members of ERISA health plans administered by Defendant Health Care Service Corporation ("HCSC").  The members' claims for insurance coverage for mental health treatment in residential treatment centers ("RTCs") were denied because HCSC determined that the service(s) were not shown to be medically necessary.  As part of the settlement, HCSC has agreed to create a common settlement fund of $3.75 million (the "Settlement Fund").  Based upon the currently available data from HCSC, the Settlement Class Members who submitted claims for residential treatment received are expected to recover approximately 30% of aggregate visit-level charges.  The effective rate of recovery is substantially higher when considering that this percentage assumes a potential reimbursement of every dollar of visit-level charges claimed by class members, while claims for reimbursement

---

[1] The Plaintiff's name has been replaced with a pseudonym because the SAC alleges facts that include his private health information.

[2] Capitalized terms not otherwise defined in this memorandum have the same meaning as in the parties' Settlement Agreement, ECF No. 75-1.

through reprocessing by HCSC could be denied, limited, or subject to reduction, making them lower than the total visit-level charges claimed by subscribers. This recovery is a very favorable one for the Class.

On July 26, 2018, the Court preliminarily approved the Settlement. ECF No. 80. Consistent with the preliminary approval order, Plaintiffs now ask the Court to award attorneys' fees and costs to Class Counsel equal to 30% of the Settlement Fund, or $1.125 million. This requested percentage award is consistent with awards for common fund settlements in ERISA and other complex federal class actions of similar size in the Seventh Circuit, and is justified by the substantial monetary relief that Class Counsel obtained for the Class as well as Class Counsel's significant effort undertaken and risk assumed in advancing novel claims under the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 (the "Parity Act"), incorporated into the Employment Retirement Income Security Act of 1974 ("ERISA") at 29 U.S.C. § 1185a. The award will result in Class Counsel receiving, at most, a modest multiplier over their lodestar. Finally, Plaintiffs request that the Court affirm its approval of an incentive award totaling $17,000 for the two named Plaintiffs.

## BACKGROUND

Plaintiffs claim that HCSC, through its adoption and use of the medical necessity criteria in the 19th and/or earlier editions of the MCG Behavioral Health Care Guidelines (collectively, "MCG Guidelines"), violated fiduciary duties under ERISA, including duties to comply with the Parity Act and Section 2706 of the Affordable Care Act ("ACA"), 42 U.S.C. § 300gg-5. *See* ECF No. 2 (SAC) ¶¶ 1-4, 15-18. HCSC began to apply the 20th edition of the MCG Guidelines on or around December 15, 2016.[3] Plaintiffs asserted claims under ERISA § 502(a)(1)(B), 29

---

[3] Starting with the 20th edition, MCG's medical necessity criteria applicable to residential mental health treatment were modified, including the criteria at issue in Plaintiffs' claims in this action. The

U.S.C. § 1132(a)(1)(B), SAC ¶¶ 59-81, alleging that HCSC violated the Parity Act as well as its fiduciary duties under ERISA by applying medical necessity criteria that are inconsistent with generally accepted standards of care (and consequently inconsistent with the terms of the plans HCSC administered) and/or more restrictive than the criteria it applies when administering claims for medical and surgical benefits.  SAC at ¶¶ 19-21.

Ms. Seger and her adopted son originally brought their claims as part of another case before this Court, *Elizabeth A. Craft, et al. v. Health Care Service Corporation*, Case No. 1:14-cv-05853 (N.D. Ill. 2018).  On March 31, 2016, the Court severed Plaintiffs' claims asserted in this action, which the Clerk subsequently designated as Case No. 1:16-cv-04571 (the "Action"). Plaintiffs' claims are summarized in their Second Amended Complaint, filed in this Action on April 26, 2016.  ECF No. 2.

Plaintiffs engaged with HCSC in written discovery for over a year, consisting of serving and responding to multiple sets of discovery requests, extensive document and data productions, and related motions practice.  In addition, Plaintiffs served third-party discovery requests on MCG and engaged with its counsel over the timing and scope of that discovery.  As the Court was preparing to hear supplemental arguments on Plaintiffs' Motion to Compel, ECF. No. 28, the Parties jointly requested a stay of the proceedings in order to engage in settlement discussions.  *See* ECF No. 57 (minute entry granting stay).  Over many months, the parties engaged in discussions of a potential settlement framework.  They reached an agreement in principle based on the establishment of a common settlement fund to resolve claims denied under

---

Settlement provides for monetary payments to members whose RTC claims were denied as not medically necessary during the period when HCSC utilized the MCG Guidelines, up to and including the 19th edition of the MCG Guidelines. The Settlement does not address any requests for RTC coverage that were denied for reasons other than medical necessity or under subsequent editions of the MCG Guidelines. Plaintiffs are no longer pursuing any claims based on HCSC's adoption and use of the 20th and later editions of the MCG Guidelines.

the 19th edition and earlier editions of the MCG Guidelines and executed the Settlement Agreement on July 9, 2018.

Class Counsel filed a motion for preliminary approval on July 13, 2018. ECF No. 74. On July 26, 2018, the Court entered an order preliminarily certifying the settlement class under Federal Rule of Civil Procedure 23(a), approving the Settlement Agreement and the notice of settlement, and setting the Fairness Hearing for October 30, 2018. ECF No. 80.

## FEES AND EXPENSES REQUESTED

Plaintiffs respectfully request the Court to award attorneys' fees and costs in the amount of $1.125 million—thirty percent of the gross Settlement Fund of $3.75 million. The requested award of attorneys' fees and expenses is reasonable, appropriate, and consistent with market rates for legal services as well as Seventh Circuit precedents involving common funds (or portions of funds) of up to $10 million. *See infra* § II.A. HCSC has agreed not to oppose Plaintiffs' application for an award of attorneys' fees and expenses that does not exceed 30% of the Settlement Fund. ECF No. 75-1, at ¶ 17. The distribution of attorneys' fees and expenses among Class Counsel is described in further detail below, and in Exhibits A-D.

## ARGUMENT

### I. LEGAL STANDARDS

Rule 23 states that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." FED. R. CIV. P. 23(h). The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

The Seventh Circuit has found that attorneys' fees based on the common-fund doctrine are appropriate in ERISA class action settlement cases. *See Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 563 (7th Cir. 1994) (*Florin I*). In evaluating the fee request, courts will consider "the overall benefit to the Class, including non-monetary benefits…to encourage attorneys to obtain meaningful affirmative relief." *Spano v. Boeing Co.*, No. 06-CV-743-NJR-DGW, 2016 WL 3791123, at *1 (S.D. Ill. Mar. 31, 2016) . Additionally, courts in this Circuit determine "whether a requested fee is within the range of fees that would have been agreed to at the outset of the litigation in an arms-length negotiation given the risk of nonpayment and the normal rate of compensation in the market at the time." *Id.* at *2; *see also In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001) (*Synthroid I*). Thus, in common fund cases, the measure of a reasonable attorney fee is "what an attorney would receive from a paying client in a similar case," *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000), which requires the district judge "to simulate the market where a direct market determination is infeasible." *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) (finding that a direct market determination is "infeasible in a class action because no member of the class has a sufficient stake to drive a hard—or any—bargain with the lawyer" and "[s]o the judge has to step in and play surrogate client.").

In the Seventh Circuit, simulating the market rate for legal fees involves an examination of several factors, including: the going market rate for legal services in similar cases; the risk of nonpayment class counsel assumed and the probability of success at the outset of litigation; the quality of class counsel's performance; and the complexity, length, and expense of the matter. *See Synthroid I*, 264 F.3d at 721; *In re Dairy Farmers of Am., Inc., Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 844-45 (N.D. Ill. 2015).

5

Courts within the Seventh Circuit often prefer to use the percentage-of-recovery method, rather than a lodestar or other basis, to calculate reasonable attorneys' fees in common-fund cases, such as this matter. *In re Dairy Farmers*, 80 F. Supp. 3d at 844 (percentage method "has emerged as the favored method for calculating fees in common-fund cases in this district"); *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) ("When a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund, in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis."); *McKinnie v. JP Morgan Chase Bank, N.A.*, 678 F. Supp. 2d 806, 816 (E.D. Wis. 2009) (awarding attorneys fees' as "a percentage of the common fund because it most closely replicates the [contingency fee] market for the legal services provided."). A common fund exists when plaintiffs share a pre-litigation interest in the subject matter of the litigation, rather than seeking recovery for discrete wrongs suffered by individual members; the class of beneficiaries is small and easily identifiable; the benefits of the settlement can be traced with some accuracy; and costs can be shifted with some exactitude to those benefitting. *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 722 (7th Cir. 2012); *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 264, n. 39 (1975).

The common-fund doctrine "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Van Gemert*, 444 U.S. at 478; *see also Florin I*, 34 F.3d 560, 563 (7th Cir. 1994) (finding that in a common-fund case, the court "determines the amount of attorney's fees that plaintiffs' counsel may recover from this fund, thereby diminishing the amount of money that ultimately will be distributed to the plaintiff class... [because] not one plaintiff, but all those who have benefitted from litigation should share its costs.") (internal citation omitted). Thus, in cases

6

with an actual, existing judgment fund, where each member of the class had "an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf," courts may assess attorneys' fees "against the entire fund, thus spreading fees proportionately among those benefited by the suit." *Van Gemert*, 444 U.S. at 478, 479; *In re Dairy Farmers*, 80 F.Supp. 3d at 844 (citing the percentage method, which involves setting the fee award as a percentage of the recovered settlement fund plus expenses and interest, as the "favored method for calculating fees in common-fund cases in this district").

Although the use of a lodestar cross-check may no longer be favored in the Seventh Circuit, a court may still consider the applicable lodestar multiplier as an additional factor in gauging the reasonableness of attorney fees. *See Spano*, 2016 WL 3791123, at *3 (recognizing that "using a lodestar cross-check is disfavored" but noting that it may still be helpful in assessing the reasonableness of a fee request); *In re Lawnmower Engine Horsepower Mtkg. & Sales Practices Litig.*, 733 F. Supp. 2d 997, 1015 (E.D. Wis. 2010) (cross-checking the percentage fee award against the fee that would be awarded under lodestar to confirm it was appropriate). Under the lodestar approach, a "lodestar" figure is calculated by multiplying the number of reasonable hours expended by each individual attorney's hourly rate. *Id.* at 1015. The lodestar is then divided into the proposed fee award to arrive at a lodestar multiplier used to compare to multipliers approved in other cases. *Id.*

As explained below, under either the percentage or lodestar approach, class counsel's fee request is reasonable and should be granted.

## II. A FEE AWARD EQUAL TO THIRTY PERCENT OF THE COMMON FUND IS FAIR AND REASONABLE IN THIS CASE.

### A. The Requested Fees are Within the Market Range that Has Been Found Reasonable in Common Fund Cases in this Circuit.

"As a barometer for assessing the reasonableness of a fee award in common-fund cases, courts look to the going market rate for legal services in similar cases." *In re Dairy Farmers*, 80 F. Supp. 3d at 845. The Seventh Circuit has noted that to simplify this assessment, a court should find out "what the market in fact pays not for the individual hours but for the ensemble of services rendered" in similar cases. *Id.* The usual range for contingent fees is "between 33 and 50 percent." *Id.*; *see also Berger v. Xerox Corp. Ret. Income Guarantee Plan*, No. 00-584-DRH, 2004 WL 287902, at *2 (S.D. Ill. Jan. 22, 2004) (finding that 29% of the gross settlement is a reasonable fee award); *Gaskill*, 160 F.3d at 362-63 (noting that typical contingency fees are between 33% and 40% and that "[s]ome courts have suggested 25% as a benchmark figure for a contingent-fee award in a class action"); *Will v. Gen. Dynamics Corp.*, No. 06–698–GPM, 2010 WL 4818174, at *2 (S.D. Ill. Nov. 22, 2010) (stating that where "the market for legal services in a class action is only for contingency fee agreements, and there is a substantial risk of nonpayment for the attorneys, the normal rate of compensation in the market is 33.33% of the common fund recovered") (internal citation omitted); *Meyenburg v. Exxon Mobil Corp.*, No. 3:05-cv-15-DGW, 2006 WL 2191422, at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation.").

Where the percentage method has been used, courts in this circuit have approved fee awards "at or about the 33.3%-of-fund level" in similar complex class actions. *See In re Dairy Farmers*, 80 F. Supp. 3d at 846 (awarding attorneys' fees of one-third of a $46 million common fund) (collecting cases); *Gaskill*, 160 F.3d at 363-64 (affirming district court's award of 38% of a common fund); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 502–03 (N.D. Ill. 2015) (awarding attorney's fees amounting to 36% of the settlement fund less administrative costs and incentive

awards); *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 WL 17009594, at *7–9 (N.D. Ill. Oct. 10, 1995) (awarding fees in the amount of one-third of the settlement fund and noting that "courts in this District commonly award attorneys' fees equal to approximately one-third or more of the recovery"). *See also* ECF. No. 75 at 19-21.

Both named plaintiffs entered into engagement agreements that address counsel fees and expenses in the event of a settlement. Ex. 4 to Decl. of Daniel P. Moylan in Supp. of Zuckerman Spaeder LLP's Motion for Attys' Fees and Expenses ("Moylan Decl."). As to a class-wide settlement, the engagement agreement provides that if the defendant reaches an agreement concerning counsel fees and costs as part of the settlement, and such fees are approved by the Court, then that award will constitute payment in full and neither Plaintiffs nor the Class will owe anything additional. *Id.* ¶ 6. Under the Settlement Agreement, HCSC agreed not to oppose an award for counsel fees and costs up to 30% of the common fund, subject to Court approval. ECF No. 75-1, at ¶ 17. In the event the Court approves the award of 30% of the common fund, this will constitute payment in full in accordance with the named plaintiffs' engagement agreements.

Landis Seger's engagement agreement has a complementary provision addressing individual settlements. Although that provision does not directly apply to the Settlement Agreement at issue here, it sheds light on an agreed market rate for counsel fees and expenses for this case. As to an individual settlement, Ms. Seger's agreement contemplates counsel receiving 30% of any gross recovery.[4] The reasonableness of the 30% of the common fund counsel fee is further evidenced by John Doe's engagement letter, in which he agreed to this arrangement in the event of a class-wide settlement and recognized such an award as reasonable. *Id.* ¶ 6.

---

[4] The provisions discussing class-wide and individual also address reimbursement for expenses and provide that the total reimbursement and share of counsel fees and expenses would not exceed 50% of the Plaintiffs' gross recovery in the event of a class-wide or individual settlement. Ex. 4, at ¶ 6.

Thus, Plaintiffs' request of 30% of the gross Settlement Fund falls within a reasonable range of market rates and Seventh Circuit precedents involving common funds in similar cases.

### B. Class Counsel Risked Nonpayment and Litigated the Case on Full Contingency.

The significant financial risk assumed by class counsel in taking this case on full contingency also supports this fee request. When determining the reasonableness of a fee award, courts in this Circuit have assessed and emphasized the severity of the risk of nonpayment assumed by class counsel. *See Florin v. Nationsbank of Ga., N.A.*, 60 F.3d 1245, 1247 (7th Cir. 1995) (*Florin II*) (emphasizing that a "court must also be careful to sustain the incentive for attorneys to continue to represent such clients on an inescapably contingent basis") (internal citation omitted); *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007) ("We recognized that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit."); *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) ("Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."). To assess the riskiness of the litigation, a court must measure "the probability of success of this type of case *at the outset* of litigation." *Florin I*, 34 F.3d 560, 565 (7th Cir. 1994); *see also In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 746 (7th Cir. 2011) ("[I]f the market-determined fee for a sure winner were $1 million the market-determined fee for handling a similar suit with only a 50 percent chance of a favorable outcome should be $2 million").

At the outset of this litigation, there was no evidence that HCSC had interest in a class settlement. Class counsel knew the expenditure of significant time, effort, and money would be needed to advance novel claims under the Parity Act and ERISA, based on HCSC's adoption and

use of medical necessity guidelines developed by a third party, MCG.  *See Moylan Decl.*, at ¶¶ 12-13; *Spano*, 2016 WL 3791123, at *2 ("Class Counsel's fee request is justified in this case given the extraordinary risk counsel accepted in agreeing to represent the Class; the fact that Class Counsel brought this kind of case when no one else had… .").  Class counsel faced significant risk of nonpayment, not only for their time, but also of unreimbursed out-of-pocket expert fees and other costs. Therefore, the proposed fee award is justified given the level of financial, legal, and factual uncertainty involved in advancing these novel claims, which yielded substantial benefit for the class.

### C.  Class Counsel Performed Substantial Work in Securing Significant Monetary Benefits for the Class.

Class Counsel's goals at the initiation of this litigation were: 1) to end HCSC's utilization of medical necessity criteria applicable to residential mental health treatment in existing editions of the MCG Guidelines; and 2) to obtain fair, reasonable, and adequate relief for class members, participants in ERISA health plans administered by HCSC whose claims for mental health treatment in RTCs were denied as not medically necessary during the period when HCSC utilized the 19th and earlier editions of the MCG Guidelines.  In furtherance of these goals, Class Counsel prepared and filed the SAC after the Action was severed, engaged in written and document discovery with HCSC (and MCG) for over a year (including serving and responding to multiple sets of discovery requests, extensive document and data productions, related motions practice, and serving third-party discovery requests on MCG), engaged in arms-length settlement negotiations with HCSC, and sought the Court's preliminary approval of the class for settlement. *See* ECF No. 75 at 1-4; ECF No. 80.[5]

---

[5] A summary of the time, costs, and expenses for Class Counsel is attached as Exhibit A. Declarations for each firm reporting time, costs, and expenses are attached hereto as Exhibits B through D.

Starting with the 20th edition, MCG's medical necessity criteria applicable to residential mental health treatment were modified, including the criteria at issue in Plaintiffs' claims in this action. The Settlement provides for substantial monetary payments to class members whose RTC claims were denied as not medically necessary during the period when HCSC utilized the MCG Guidelines, up to and including the 19th edition of the MCG Guidelines.[6] Based upon the currently available data from HCSC, the Settlement Class Members who incurred out of pocket costs are expected to recover approximately 30% of aggregate visit-level charges, a percentage which assumes a potential reimbursement of every dollar of visit-level charges claimed by class members. *See* ECF No. 75 at 20-21 (detailing how the effective rate of recovery under this settlement is a substantially higher percentage than this estimate of 30% suggests, and citing cases with similar magnitudes of recovery).

The work of Class Counsel is not complete. Here, the Class will receive no benefit if the Settlement Agreement does not receive final approval. Because Class Counsel is filing this fee request prior to final approval, the lodestar calculation and description of work set forth above does not account for the time counsel will spend responding to any objections to settlement, in seeking final approval of the class settlement, or in addressing any issues that may arise during potential future implementation of the plan of allocation. Such time spent to achieve benefits for the class is compensable. *See Van Gemert*, 444 U.S. 472 at 478. Thus, Class Counsel's ability to obtain substantial monetary relief for the class favors approval of the requested award. *See In re Dairy Farmers*, 80 F. Supp. 3d at 844, 849 (N.D. Ill. 2015) (indicating that quality of class counsel's performance in achieving settlement, *i.e.*, "whether this is the type of outcome that

---

[6] Class Counsel created a Plan of Allocation that ensures *every* Participating Settlement Class Member will get a payment, with the minimum amount expected to be just over two thousand dollars. *See* ECF No. 75-6.

willing clients would have envisioned from the outset," is another litmus test for assessing reasonableness).

### D. Class Counsel Faced Significant Risks in Undertaking to Litigate this Complex, and Potentially Lengthy and Expensive, Case Through Class Certification and Trial.

At the outset, Class Counsel knew that prosecuting these novel claims under the Parity Act could involve years of discovery, extensive motions practice, related hearings, presentation of evidence and argument at trial, and possible appeals, which would likely require thousands of hours of attorney time to complete, as well as the advancement of significant out-of-pocket costs and expenses, including to engage experts. Class Counsel have collectively spent just over 1,300 hours advancing this matter, with a total lodestar of approximately $896,252. *See* Ex. A. Additional time will be spent in overseeing claims administration and preparing for and attending the final fairness hearing. In taking on the case, Class Counsel invested time in a matter with an uncertain outcome rather than applying that time in hourly cases with regular payment at hourly rates. *See* Ex. B, Moylan Decl., at ¶ 12.

The complexity of the claims presented and the uncertainty arising from the potential length and expense of this litigation at its outset favor the award here. *See*, *e.g., Synthroid I*, 264 F.3d at 721 (noting that market rate depends "in part on the amount of work necessary to resolve the litigation"); *In re Dairy Farmers*, 80 F. Supp. 3d at 847 (listing an assessment of the complexity, length, and expense of the litigation as a factor in determining the reasonableness of a fee award).

### E. A Lodestar Cross-Check, Although Disfavored by Courts in the Seventh Circuit, Nevertheless Confirms the Reasonableness of This Fee Award.

In this matter, a thirty percent fee award will provide at most a small risk multiplier (between 1 and 2) over lodestar. Attached in support of this motion are sworn declarations from

the attorneys at each firm who principally worked on this matter. *See* Exs. B-D. In each of these declarations, the declarant-attorney attests to the total time his firm spent litigating this matter and the hourly rates of the attorneys at that firm effective at the time services were performed. *See id.* Exhibit A summarizes the total hours and lodestar across all three firms involved in this litigation. Together, class counsel firms that worked on this matter reported having spent in excess of 1,300 hours advancing the matter and a collective lodestar of $896,252 Ex. A. Thus, the requested award of $1.125 million represents a current lodestar multiplier of about 1.25. This is at the lower end of the typical range, and will decrease based on additional time after this submission. Although not a required point of comparison (and indeed one that is disfavored by courts in the Seventh Circuit), the modest scope of this risk multiplier further confirms that the requested fee is within the range of reasonableness. *See Cook v. Niedert*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach."); *Harman v. Lyphomed, Inc.*, 945 F.2d 969, 976 (7th Cir. 1991) ("[m]ultipliers anywhere between one and four have been approved"); *Spano*, 2016 WL 3791123, at *3 ("lodestar multipliers can be reasonable in a range between 2 and 5" in risky litigation).

Zuckerman Spaeder LLP ("Zuckerman") attorneys served as lead plaintiffs' counsel throughout this litigation, and have had the primary responsibility for prosecuting Plaintiffs' claims against HCSC and negotiating the Settlement Agreement. The total time spent by Zuckerman lawyers from April, 2016 through July, 2018 would be billable at standard rates at just over $840,000, and Zuckerman's aggregate expenses are just over $30,000. *See* Moylan Decl., Exs. 2 and 3.

Meiram Bendat of Psych-Appeal, Inc. ("Psych-Appeal") was originally retained in July, 2014 by one of the class representatives in the Craft class action, *see supra* p.3, and Psych-Appeal served as Plaintiffs' counsel for the entire litigation. The time spent on this matter by Psych-Appeal from September 10, 2014 through August 22, 2018 is billable at $40,237.50, and it did not incur any supplemental litigation costs. *See* Ex. C, Decl. of Meiram Bendat in Supp. of Psych-Appeal, Inc.'s Motion for Attys' Fees and Expenses ("Bendat Decl.") at ¶¶ 7-8.

Miner, Barnhill & Galland, P.C. ("MB&G") has served as local counsel for the Plaintiffs throughout this litigation. The time spent by MB&G from April, 2016 through August, 2018 is billable at $14,758.25, and the firm's aggregate costs are $30.30. *See* Ex. D, Decl. of George F. Galland in Supp. of Miner, Barnhill & Galland, P.C.'s Motion for Attys' Fees and Expenses ("Galland Decl.") at Ex. 2.

In total, the lodestar for all three firms is $896,252 in fees and $31,944.50 in costs. Ex. A. Class Counsel respectfully submit that the costs and expenses were reasonable and necessary to obtain the Settlement Agreement and consistent with what the market would award in a private setting. Class Counsel anticipate additional costs and expenses will be incurred up to the time of final approval and after, and these expenses further support the reasonableness of this fee request involving a risk multiplier at or below 1.25.

## III. THE COURT SHOULD GRANT FINAL APPROVAL OF THE INCENTIVE AWARD FOR THE NAMED PLAINTIFFS.

The Settlement Agreement calls for the payment totaling $17,000 for the named plaintiffs, subject to the Court's approval. ECF No. 75-1, at ¶ 16. As Class Counsel have described, this award is appropriate because it is within the average range of incentive awards in similar class actions within this Circuit, and is justified given the significant emotional and time demands this litigation placed on John Doe, Ms. Seger, and the Seger family. *See* ECF No. 75

at 17-19 (citing Seventh Circuit precedent); Ex. B, Moylan Decl., at ¶ 15-16; *see also Spano*, 2016 WL 3791123 at *4 (finding awards of $25,000 for each of three class representatives, where total class representative awards amounted to less than one percent of the fund, reasonable).  This Court preliminarily approved an incentive award totaling $17,000 for the Class Representatives.  ECF No. 80, at ¶ 4.  Plaintiffs respectfully request the Court to finally approve these awards in connection with final approval of this Settlement.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court finally approve a fee equal to 30% of the Settlement Fund, or $1,125,000, and approve a $17,000 incentive award for the Class Representatives.

Dated: August 27, 2018

Respectfully submitted,

<u>s/ Daniel P. Moylan</u>

| | |
|---|---|
| D. Brian Hufford (*pro hac vice*) | Martin S. Himeles, Jr. (*pro hac vice*) |
| Jason S. Cowart (*pro hac vice*) | Daniel P. Moylan (*pro hac vice*) |
| ZUCKERMAN SPAEDER LLP | Adam Abelson (*pro hac vice*) |
| 485 Madison Avenue, 10th Floor | ZUCKERMAN SPAEDER LLP |
| New York, NY 10022 | 100 East Pratt Street, Suite 2440 |
| (212) 704-9600 | Baltimore, MD 21202-1031 |
| | (410) 332-0444 |
| Caroline E. Reynolds (*pro hac vice*) | |
| ZUCKERMAN SPAEDER LLP | George F. Galland, Jr. |
| 1800 M Street NW, Suite 1000 | Scott A. Entin |
| Washington, DC 20036 | MINER, BARNHILL & GALLAND, P.C. |
| (202) 778-1800 | 14 W. Erie St. |
| | Chicago, IL 60654 |
| Meiram Bendat (*pro hac vice*) | (312) 571-1170 |
| PSYCH-APPEAL, INC. | |
| 8560 W. Sunset Blvd., Ste. 500 | |
| West Hollywood, CA 90069 | |
| (310) 598-3690, ext. 101 | |

*Counsel for Plaintiffs and the Putative Class*